### PAGE v. LOCKLEY.

#### No. 2412.

Court of Civil Appeals of Texas. Eastland.
Oct. 15, 1943.

Rehearing Denied Jan. 7, 1944.

994

House, Mercer, Edwards & Irvin, of San Antonio, for appellant.

Scarborough, Yates & Scarborough, of Abilene, for appellee.

FUNDERBURK, Justice.

G. C. Lockley sued Oscar Page (Black and White Cab Company) to recover damages for personal injuries resulting from a collision between a taxicab, owned by defendant and driven by an employee, and an automobile used by plaintiff. The collision occurred at night on Pine Street in the City of Abilene. The automobile in charge of plaintiff, and in which he was seated, was standing still when struck by defendant's taxicab approaching from the rear. Plaintiff alleged negligence of the taxi-driver in the following respects:

"1. Said taxi-driver failed to keep a proper look-out.

"2. Said taxi-driver was driving at an excessive rate of speed.

"3. Said taxi-driver was operating said cab at night in the City of Abilene and State of Texas, an incorporated city, in excess of twenty-five miles an hour."

Defendant pleaded a number of grounds of defense consisting of contributory negligence, and in addition thereto pleaded that bright lights of a third party blinding defendant's taxi-driver was the sole cause of the accident, and, alternative to all defenses of contributory negligence, alleged that the collision was due to unavoidable accident.

In a trial by jury only one of the three alleged grounds of recovery was submitted, namely, negligence consisting of a failure of the taxi-driver to keep a proper look-out. The issues involved in such ground of recovery, as well as all defensive issues submitted, were found in favor of plaintiff. From the judgment, in the sum of $1,674, based to the extent of $1,500 upon said verdict and to the extent of $174 upon a finding made by the judge, the defendant has appealed.

In our opinion, the verdict is not subject to challenge on the ground that it is a "quotient" verdict. The evidence justified the conclusion that there was no agreement of the jurors that the result of dividing by twelve the sum of the amount of damages favored by each juror should constitute the verdict. While such an agreement would not, we think, necessarily be an express agreement, but might be implied, even so, there was no express agreement, and there was evidence sufficient to exclude any implication of such agreement. That a preagreement to the effect that the result of the division should constitute the verdict, is essential to show misconduct in such respect, seems to be well settled. Allcorn v. Fort Worth & R. G. Ry. Co., Tex.Civ.App., 122 S.W.2d 341; State v. Littlefield, Tex.Civ.App., 147 S.W. 2d 270; Karotkin Furniture Co. v. Decker, Tex.Civ.App., 32 S.W.2d 703, and authorities cited.

The amount of damages awarded by the verdict of the jury was $1,500. The judgment awarded recovery of $1,674. The difference of $174 represented that part of the total damages resulting from incurred reasonable and necessary doctors' and hospital bills. The $174 item was included in the judgment on the theory that the facts that the same, in such amount, was incurred and the necessity and reasonableness thereof, were established conclusively by the evidence.

One point made is to the effect that the court erred in including said $174 in the amount of recovery awarded, "as Plaintiff waived same in not requesting it to be submitted to the jury." Plaintiff counters with the contention that the action of the court was authorized by Rule 279 (Texas Rules of Civil Procedure.) Provisions of said rule pertinent, or possibly so, are as follows:

"Failure to submit an issue shall not be deemed a ground for reversal of the judgment, unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment; provided, however, that objection to such failure shall suffice in such respect if the issue is one relied upon by the opposing party. * * *

"Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and upon which no issue is given or requested shall be deemed as waived; but where such ground of recovery or of defense consists of more than one issue, if one or more of the issues necessary to sustain such ground of recovery or of defense, and necessarily referable thereto, are submitted to and answered by the jury, and one or more of such issues are omitted, without such request, or objection, and there is evidence to support a finding thereon,

\* \* \* such omitted issue or issues shall be deemed as found by the court in such manner as to support the judgment."

■ Under the circumstances here presented, the above-quoted provisions of the Rule suggest a number of interesting questions not dealt with in the briefs. What is a "ground of recovery?" More specifically, is the claim for damages (alleged at $250) consisting of expenses incurred for medical services and hospitalization, a ground of recovery? If so, is it an independent ground of recovery? It affirmatively appears from a recitation in the judgment that the $174 was included because the judge considered that the right thereto had been established conclusively by the evidence. The evidence as to the reasonableness of amount and the necessity of incurring the expenses was opinion evidence. All such evidence was either that of interested witnesses or consisted of opinions, or both. Opinion evidence, when admissible, only raises an issue of fact, but does not conclusively establish the fact. Simmonds v. St. Louis, B. & M. Ry. Co., 127 Tex. 23, 91 S.W.2d 332; Crow v. Thompson, Tex.Civ.App., 131 S. W.2d 1064; Guinn v. Coates, Tex.Civ.App., 67 S.W.2d 621; Hodges v. Hodges, Tex. Civ.App., 111 S.W.2d 779; City of Big Spring v. Fletcher, Tex.Civ.App., 156 S. W.2d 316; Bridwell v. Bernard, Tex.Civ. App., 159 S.W.2d 981; Metropolitan Life Ins. Co. v. Funderburk, Tex.Civ.App., 81 S.W.2d 132; Octane Oil Ref. Co. v. Blankenship Antilley Implement Co., Tex.Civ. App., 117 S.W.2d 885; Gulf, C. & S. F. Ry. Co. v. Davis, Tex.Civ.App., 225 S.W. 773.

■ But notwithstanding the court, in our opinion, was in error in concluding that the evidence conclusively established the $174 damages, additional to the damages found by the jury, it does not follow necessarily that defendant has the right to complain of the court's action in that regard. Whether under provision of said Rule 279 the right to the $174 has been waived by plaintiff, or the right to complain of the court's action in awarding recovery thereof has been waived by defendant, depends upon whether or not the claim for this item of damages is an independent ground of recovery. We shall assume, without deciding, that such claim constitutes a ground of recovery within the meaning of said Rule. If it constitutes a ground of recovery, then we have no doubt it is an independent ground. An independent ground of recovery undoubtedly means a ground independent of other grounds, if any. As an independent ground of recovery no issue was submitted or requested to be submitted, nor was objection made to any failure or refusal to submit any issue "necessary to sustain such ground of recovery" and/or "necessarily referable thereto." Hence, assuming the validity of said Rule, we think, under the provisions of the Rule, the right to recover the $174 as part of the damages not being conclusively established by the evidence as above shown was waived. If this were the only error it could be corrected by reformation.

The court submitted an (so called) issue of unavoidable accident, as follows: "Do you find from a preponderance of the evidence that the collision was *not* the result of unavoidable accident?" (Italics ours.) Accompanying same was a definition of the term "unavoidable accident" as follows: "By the term 'unavoidable accident' as used in this charge is meant an event happening suddenly and unexpectedly without the foresight or knowledge and without fault or negligence on the part of either party to this law suit." Objection was made to the definition to the effect that it was incorrect, in that the proper definition was as follows: "An unavoidable accident is an accident that happened without the negligence of either party to this law suit." The pleading which tendered the issue was an allegation in defendant's answer as follows: "This Defendant says if the accident was not caused by the negligence of the Plaintiff, then said accident was an unavoidable accident, as the driver of said taxi was in no way to blame for same."

■ Under the definition given by the court the issue was the same as if it had been stated as follows: Do you find from a preponderance of the evidence that the collision was not the result of an accident which happened suddenly and unexpectedly without the foresight or knowledge and without fault or negligence on the part of either party to this lawsuit? Under the definition contended for by defendant, the issue was the same as if it were as follows: Do you find from a preponderance of the evidence that the collision was not the result of an accident that happened without the negligence of either party to this lawsuit? Neither party pleaded that

the collision did not result from an unavoidable accident. The issue was, therefore, evidently stated as it was, under the assumption that it was the same issue pleaded, the only difference being that it cast the burden of proof upon the plaintiff. Under the definition given by the court, a greater burden was cast upon the plaintiff in order to establish the issue, as stated, than would have been the case had the court given the definition suggested by defendant. Under the definition given, plaintiff could not rest with a simple showing that the collision did not result from the negligence of himself or the defendant. It was necessary to go further and show that it did not happen suddenly or unexpectedly without forethought or knowledge, and that it was without fault, if any (other than negligence), of either party. In no essential respect, insofar as we can see, did the definition have the effect of placing any less burden upon the plaintiff, and in some respects it did have the effect of casting a greater burden upon him. We, therefore, conclude, without reference to the correctness of the definition given or the one suggested, that defendant could not have been harmed by the definition given.

Without discussion, we overrule all other points of the defendant, except the first, contending there was no evidence of the failure of the taxi-driver to keep a proper look-out, and the second, that there was no evidence that said driver was negligent in failing to keep a proper look-out. The court defined "Proper Look-out" as "Such a look-out as a reasonably prudent person would have kept under the same or similar circumstances." It may, therefore, be observed, by way of preliminary, that the second of the above two points was, in effect, merely a repetition of the first. The failure to keep a proper look-out, according to the definition given, was the equivalent of *negligent* failure to keep a look-out. Commercial Standard Ins. Co. v. Shudde, Tex.Civ.App., 76 S.W.2d 561.

■ Regardless of whether submitted as one or two issues, two issues were actually involved, namely, (1) Did the taxi-driver fail to keep a look-out, and (2) Was such failure, if any, negligence. Defendant, in effect, contends that there was no evidence to support a finding, in the affirmative, of either of said issues. After reading the statement of facts, it is our conclusion that if there was any such evidence, it consisted alone of the fact that the taxi-driver did not see the automobile in time to prevent the collision, and the following testimony of the taxi-driver:

"Q. If this other car [the one in which Plaintiff was sitting] had had a light on it, could you have seen it? A. Yes."

There was a direct conflict in the testimony as to whether the car was lighted. Upon a different issue from those now under consideration the jury found, upon such conflict of evidence, that plaintiff did not park the car he was driving in the street without a rear light shining on it "so as to be plainly visible under normal atmospheric conditions for a distance of not less than 500 feet to the rear of said vehicle." Such finding cannot properly be given any effect as evidence upon the issues now under consideration. The jury also found upon a different issue that "just prior to the collision the driver of defendant's taxi was blinded by the lights of a car coming in the opposite direction." Neither of these findings as such add to or detract from the evidence, if any, supporting the issue that the taxi-driver failed to keep a look-out. As we recently had occasion to say, "In considering a question of the existence or sufficiency of evidence to support a verdict upon a particular issue, the entire evidence is properly to be considered *unaffected by any conclusion or finding of the jury upon other and independent issues.*" (Italics now supplied.) Dotson v. Braswell, Tex.Civ.App., 172 S.W.2d 985, 986.

■ There were two ways open to plaintiff to discharge the burden of producing a preponderance of evidence to show that the taxi-driver was not keeping a look-out. One was to offer direct evidence to that effect. The other was to establish facts from which the ultimate fact in issue could reasonably be inferred or presumed. There was no direct evidence. We cannot agree to the statement in plaintiff's brief that "The taxi-driver * * * testified that he was looking to the ground just in front of his front fender *and was not looking down the street toward where the Plaintiff was.*" (Italics ours.) True he was asked a question no doubt designed to elicit testimony to such effect, but the record reflects no answer to the question. The plain purport of the taxi-driver's testimony in this respect was that he could not see the car because of blinding lights, but could see his own position

in the street by looking down over the fender. The duty to keep a look-out includes the duty to look immediately in front, as well as at a distance ahead, and the doing of one carries no implication of failure to do the other.

In the absence of any evidence accounting for the failure of the taxi-driver to see the automobile, it may be that a presumption would exist that he failed to see it because he was not looking. In such case the presumption would in itself be no evidence, but merely a legal procedure the equivalent of evidence, or merely dispensing with the necessity of evidence. But when the taxi-driver testified positively that he did not see the automobile and could not see it because he was blinded by approaching bright lights of another motor vehicle, the presumption was no longer operative. In Empire Gas & Fuel Co. v. Muegge, 135 Tex. 520, 143 S.W.2d 763, 767, Judge Smedley, speaking for the Supreme Court, said: "It is settled in this state, and by weight of authority elsewhere, that such presumption is not evidence but rather a rule of procedure or an 'administrative assumption' which 'vanishes' or is 'put to flight' when positive evidence * * * is introduced. * * * It is not evidence and when met by rebutting proof is not to be weighed by the jury or treated by the jury as evidence in arriving at a verdict."

This decision settled a conflict in authority which we discussed, but found it unnecessary to determine the question involved, in National Aid Life Ass'n v. Driskill, 138 S.W.2d 238. We have since followed the Muegge decision in Langlitz v. American National Ins. Co., Tex.Civ. App., 146 S.W.2d 484, Hoffer v. Eastland National Bank, Tex.Civ.App., 169 S.W.2d 275, and two or three other cases.

With said presumption eliminated, what evidence was there that the taxi-driver was not keeping a look-out? The fact must not be lost sight of that the burden of establishing the issue by a preponderance of the evidence was upon the plaintiff. In this inquiry we, of course, attach no probative value to the testimony of the taxi-driver to the effect that he was keeping a look-out. The only effect properly to be given his testimony is the elimination of any otherwise possibly existing presumption that he was not keeping a look-out. Unaided by such presumption, the fact of the collision, or fact that the taxi-driver did not see the car, was no evidence that the taxi-driver was not keeping a look-out. Plaintiff was under the necessity of producing some affirmative evidence that he was not keeping a look-out. He could possibly resurrect the presumption by evidence that the taxi-driver was not blinded by the lights, but there was no such evidence. He could possibly support the issue by evidence requiring no presumption, such as evidence inconsistent with keeping a look-out, but there was no such evidence. There was simply an entire absence of any evidence, unless the before-quoted testimony of the taxi-driver that if the car had been lighted he could have seen it constitutes some evidence.

The testimony on its face shows it to be a matter of opinion, rather than of fact. If in truth the car was lighted, how does that affect the opinion except to show that it was wrong? How can proof of a fact showing the opinion to be wrong have the effect of converting the opinion into evidence tending to show that the taxi-driver was not keeping a look-out? Upon the only issue to which its consideration is here material, the opinion, we think, was wholly without value.

At any rate, as evidence it could not arise to anything more than a mere suspicion or surmise condemned as evidence by the mere scintilla doctrine set forth in the leading case of Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059.

The conclusion which we reach upon the whole is that the judgment of the court below should be reversed and the cause remanded. It is accordingly so ordered.

### On Rehearing.

In appellee's motion for rehearing his attorneys say this court "evidently did not read the case of Southland Life Insurance Company v. Greenwade [138 Tex. 450], 159 S.W.2d 854", and further, that "That case expressly repudiates the doctrine on which the court decided this case and expressly rejected the doctrine announced in the case of National Aid Life Association v. Driskill [Tex.Civ.App.], 138 S.W. 2d [238], 239." Although the Greenwade case was not cited, we did examine it, but only sufficient to satisfy ourselves that the proposition in the Driskill case, which was expressly disapproved in the Greenwade case, involved a different question from the one in this case, and that the Greenwade opinion purported to be in ac-

998

cord with Empire Gas & Fuel Co. v. Muegge, 135 Tex. 520, 143 S.W.2d 763, which we thought we were following.

However, a more careful reading of the Greenwade opinion, with particular reference to the facts and the judgment rendered, shows that it apparently supports the statement that it "expressly repudiates the doctrine on which the court decided this case * * *." We have made a careful study of the Greenwade opinion and have reached the conclusion that, rightly understood, it does not show that we have not determined the question in the instant case in full accord with sound legal principles, often recognized and applied by the Supreme Court.

▆▆▆▆ The Greenwade opinion affirmatively expresses the intention of the court not to overrule the Muegge case. This being true, then, of course, one opinion is no more authoritative than the other. In the Greenwade opinion [138 Tex. 450, 159 S.W.2d 858] the term "prima facie case" and the words "presumption" and "inference" are used interchangeably as meaning the same thing. The words "presumption" and "inference" are often so used. But there can hardly be any difference of opinion that the word *presumption,* in the sense as discussed in the Muegge case [135 Tex. 520, 143 S.W.2d 767], *that is,* "a rule of procedure or an 'administrative assumption' which 'vanishes' or is 'put to flight' when positive evidence to the contrary is introduced," means something very different from that of the word *inference.* Such distinction is stated in Corpus Juris Secundum as follows: "The fundamental characteristic of a presumption, as distinguished from an inference, is that the former affects the duty of producing further testimony, not merely the weight of that already produced. It has also been said that a presumption is a rule which the law makes upon a given state of facts, while an inference is a conclusion which, by means of data founded upon common experience, natural . reason draws from facts which are proved." 31 C.J.S., Evidence, § 115. The relation of *presumption* and *inference,* in their distinctive meanings, to a "prima facie case" may be stated as follows: (a prima facie case may in the present discussion more accurately and concretely be designated as prima facie proof of a fact in issue.) A presumption enables a party having the burden of establishing an issue to establish it, provi-

sionally and prima facie, with less evidence than would be required in the absence of the presumption. On the other hand, there must be *evidence* to support an inference of a fact in issue and thereby enable a party, having the burden of doing so, to establish such fact, prima facie. A presumption may arise from evidence, insufficient to warrant an inference of the fact in issue, and hence, if the presumption, being in itself no evidence, be "annulled", or if it "vanishes", or is "put to flight" by positive contrary evidence, the evidence upon which it was founded remains, as before, insufficient to establish the fact in issue, prima facie. On the other hand, if the evidence (unaided by any presumption) raises an inference of the fact in issue, such evidence, because it is evidence and not presumption, remains sufficient in itself to establish the issue, prima facie. It follows, therefore, that there is an important difference in consequences between the contradiction by positive evidence of a presumption and the contradiction by such evidence of an inferred fact. The positive contradiction of a presumption results in the destruction of the prima facie proof of the fact otherwise presumed, and imposes upon the adverse party the burden of proceeding with more, or other, evidence upon penalty for failure to do so of having an instructed verdict against him upon the issue. On the contrary, however, the evidence contradictory of an inferred fact, however positive, does not eliminate the inference from consideration by the trier of facts in reaching a conclusion upon the issue.

▆▆▆ In the sentence of the Greenwade opinion reading: "The prima facie case of due receipt of the letter made out by plaintiff in the present case is not *conclusively* rebutted by the company's evidence tending to establish it was not received," (Italics ours,) the correctness of that statement depended upon whether "prima facie case" was used as the equivalent of a *presumption,* or whether it was used as the equivalent of an "inference". If it meant the same as *presumption,* in contradistinction to *inference,* then the idea intended to be conveyed was not happily expressed since, as a moment's reflection will make clear, there is no such thing as a *partial* rebuttal of a presumption, and, therefore, no reason to speak of its being *conclusively* rebutted. On the other hand, if "prima facie case" was used in the sense of prima facie proof of a fact in issue,

made only by evidence warranting an *inference* of such fact, then, of course, nothing less than evidence conclusively rebutting such inference could warrant the court in determining the issue as one of law, rather than leaving it for the determination of the jury. Further, as indicative that "prima facie case" was used to express the concept of an *inference* in contradiction from a presumption, is the use of the qualifying adjective *prima facie.* A presumption, in the sense here considered, itself imports the idea of prima facie. In such sense it is tautology to speak of *prima facie* presumption.

▆ There is other evidence that the term "prima facie case" was used in the true sense of *inference,* rather than *presumption,* because otherwise the opinion implies that the burden was on the company (defendant) to prove *conclusively* that the letter was not received. The burden was upon plaintiff to establish the fact that the letter was received. If, therefore, in order to get rid of the presumption that it was received, there was imposed upon the defendant the burden of proving *conclusively* that the letter was not received, then there was a shifting of the burden of proof from the plaintiff to the defendant. Nothing is better settled in the jurisprudence of this state than that the burden of proof upon an issue never shifts from one party to the other. Clark v. Hiles, 67 Tex. 141, 2 S.W. 356; St. Louis, etc., R. Co. v. Burns, 71 Tex. 479, 9 S.W. 467; Scott v. Pettigrew, 72 Tex. 321, 12 S.W. 161; Jester v. Steiner, 86 Tex. 415, 25 S.W. 411, and numerous other decisions of the Supreme Court. We feel that we must assume that there was no intention (none being discussed) to overrule these decisions.

One other consideration would seem to be entirely conclusive in support of the view that *inference* and not *presumption* was meant. If the effect of the presumption was to impose the burden upon the defendant in order to get rid of it that he offer evidence to show *conclusively* that he did not receive the letter, that being conclusive of the issue, there would be no necessity of submitting it to the jury, but on the contrary it would be improper to do so. Such, however, was not the conclusion reached. On the contrary, the holding was that an issue of fact was raised, making the issue one for determination of the jury.

There seems to us to be no escape from the conclusion that if in the quoted sentence if the words "prima facie case" were not meant to express the idea of an inference in contradistinction to a presumption, then the opinion supports the proposition contrary to the long line of cases above cited that in any case where plaintiff offers only sufficient evidence to raise a presumption of the fact in issue which he has the burden of establishing, such presumption is not rebutted, but remains as support for the jury's verdict, found in accordance therewith, unless the defendant not merely contradicts positively, but conclusively disapproves the otherwise presumed fact. Under such an interpretation of the opinion the true proposition would be that a presumption not merely "affects the duty of producing further testimony", but in practical effect, shifts the burden of proof upon the issue to which it relates to the opposite party to establish the negative of the fact in issue.

There is much more evidence in the Greenwade opinion indicating that part of the discussion relates to a presumption (as distinguished from an inference) and part relates to an inference (as distinguished from a presumption) but without recognition of any difference in the meaning of the words. For illustration, it is said: "We agree with the company's contention that a presumption, as such, is not evidence and that it vanished as such in view of the opposing evidence * * *." Here is evident recognition of the attributes of a presumption, not an inference. Then the company's contention with which agreement is thus signified is stated as follows: "The company's contention, reduced to proposition form as substantially stated in the application for writ of error, is that the 'presumption of fact that the mailed letter was received' vanished when its evidence tending to show the letter was received, was introduced." Although, so far as we can see, this is the very contention to which agreement had just been expressed, the immediate reply was: "Such is not the majority rule, and is certainly not the rule in this State." Here is clearly evident some mistake of understanding or expression, or both, made still more manifest by citing as the first two authorities the Muegge case and Langlitz v. American Nat. Ins. Co., Tex.Civ.App., 146 S. W.2d 484, the latter by this court. In the Muegge case, fully corroborative of said contention in the Greenwade case, it was

said: "It is settled in this state, and by the weight of authority elsewhere, that such presumption is not evidence but rather a rule of procedure or an 'administrative assumption' which 'vanishes' or is 'put to flight' when positive evidence to the contrary is introduced." The declared effect was "The presumption as to the ownership of the truck arising from the registration and the presumption as to its use in transporting the ditching machine arising from the permit are not to be regarded as having *raised* an issue or issues of fact for the jury's determination, if such presumptions were met by positive rebutting proof." (*Italics ours.*) This poses this question: What was meant by said answer to the company's contention; or, in other words, why was it declared that "Such is not the majority rule, and is certainly not the rule in this state"? Was the rule so referred to the same rule regarding the effect of positive evidence contradicting a presumption, of which the opinion in the Muegge case had said: "It is settled in this state, and by weight of authority elsewhere, that such presumption is * * * rather a rule of procedure or an 'administrative assumption', which 'vanishes', or is 'put to flight', when positive evidence to the contrary is introduced"? The conclusion seems inescapable that the rule so referred to in the Greenwade opinion related to inference, rather than presumptions, and that referred to in the Muegge opinion related to presumptions rather than inferences. But the reference in the Greenwade opinion was under the mistaken assumption that the governing rules were the same. The opinion, after expressing agreement as aforesaid with the "company's contention", in the succeeding clause expressed disagreement as follows: "But we do not agree that the evidentiary facts upon which it was established, could no longer be considered by the trier of the facts." Thus it appears the court assumed that unless it qualified its agreement with the company's contention—"that the 'presumption of fact that the mailed letter was received', vanished when its evidence tending to show the letter was not received, was introduced",—that would imply agreement that the evidentiary facts supporting the presumption likewise vanished. Quite obviously that was a mistaken assumption. Of course the rebuttal of a presumption would not have the effect of eliminating evidence of the facts upon which the presumption

was based. The question is, would such evidentiary facts, no longer aided by the presumption or by any other evidence, be sufficient to establish prima facie the issue? Surely, it would seem, there can be no reasonable difference of opinion upon the proposition that if but for the presumption the evidence upon which it was based was insufficient to establish prima facie the issue, then upon the rebuttal and consequent elimination of the presumption such evidence still remained, as before, insufficient of itself to establish prima facie the issue. Only by the plaintiff's producing more evidence could an issue be raised for the determination of the jury. If three and a half quarts and two pints are required to make a gallon, and two pints be destroyed, will the three and a half quarts nevertheless make the gallon? If from evidence merely sufficient to support a presumption but insufficient in the absence of the presumption to establish prima facie the issue, the presumption be withdrawn, will not such evidence still remain insufficient to establish the issue, prima facie?

█ The most reasonable construction of the Greenwade opinion, it seems to us, is that what was said about the conclusive rebuttal of a presumption, and the necessity therefor, referred to a prima facie case (or more concretely, prima facie proof of a fact in issue) where the evidence raised, not a presumption, but an inference of the fact in issue. Evidence, if any, sufficient to support such an inference, of course, raised the issue and required its determination by the jury as one of fact, in the absence of conclusive evidence (if any such were possible) rebutting the inference, or, in other words, conclusively rebutting the prima facie proof of the fact in issue.

That evidence sufficient to annul a presumption does not make, or leave, the evidence which supported it sufficient without the presumption to raise the issue and require its submission to the jury is perhaps nowhere better stated than in the opinion by Judge Alexander, while a member of the Court of Civil Appeals. He said: "The evidence is wholly insufficient to establish that he [the servant] was engaged in his master's business at the time of said collision. Evidence that the truck with which the injury was committed belonged to the news company [defendant] and that it was being driven by one regularly in

its employment, *in the absence of evidence to the contrary,* raised a *presumption* that such servant was engaged in the news company's business at the time of such collision. Studebaker Bros. Co. v. Kitts, Tex.Civ.App., 152 S.W. 464. This, however, is a *mere rule of procedure* and the presumption vanishes when *positive evidence to the contrary is introduced.* * * * When * * * such evidence is positive to the effect that the servant was not engaged in the master's business at the time of the injury, the presumption *is nullified* and *the burden is then upon the plaintiff* to produce *other evidence or his cause fails.*" (Italics ours). Houston News Co. v. Shavers, Tex.Civ.App., 64 S. W.2d 384, 386. The presumption, the nature and effect of which is here stated, is the same discussed by Judge Smedley in the Muegge case, the Shavers case being one of the cases cited. Is it reasonable to interpret the Greenwade opinion as overruling the opinion in Houston News Co. v. Shavers, supra, when it clearly implies if it does not express approval of the opinion in the Muegge case, which cited the former with approval, and expressly reaffirmed its holding? We think not, and if the opinion in the Greenwade case is not correct, its incorrectness involves a question not mentioned in that opinion. That question may be stated as follows.: In a case in which the evidence upon an issue which one party has the burden of establishing by a preponderance of the evidence is sufficient to raise a presumption of the fact in issue, but insufficient to support an inference of such fact, if the other party produces positive (though not conclusive) evidence contrary to the fact presumed, and the party having the burden of proof upon the issue produces no more evidence upon that issue, is the issue supported by sufficient evidence to require its submission to the jury? It seems to have been so assumed in the Greenwade case, but, as said before, the conclusion was based upon failure to recognize the distinction between a presumption and an inference.

In the instant case upon original consideration we took the view that there was no evidence to raise the issue that the cab driver was not keeping a lookout. We assumed that the facts in evidence that the car with which defendant's cab collided was standing on the street with the lights on, and that the cab driver did not see it in time to avoid the collision might

"in the absence of evidence to the contrary", supported a presumption that he was not keeping a lookout. Our view was that although the evidence alone would not raise the issue, such evidence, plus the presumption, established the issue prima facie. But when the cab driver testified positively he was keeping a lookout and did not see the car because he was blinded by undimmed lights of an approaching car, we said, as Judge Alexander said in the Shavers case, supra, that the evidence annulled the presumption, and without the presumption, the evidence was insufficient to raise the issue so as to require its submission to the jury, the plaintiff having offered no other evidence.

So long as the opinion in the Shavers case has the approval of the Supreme Court as in the Muegge case, which latter appears to be cited with approval in the Greenwade opinion, we feel it our duty to adhere to the views expressed in our original opinion.

 If the deduction to be made, if any, from the facts, which we considered as supporting the presumption, is, in its true nature, not a presumption, as we assumed, but an inference, we are, nevertheless, of the opinion that the mere fact that the cab driver did not see the car in time to avoid the collision is alone no evidence that the cab driver was not keeping a lookout, and even if considered as some evidence, it was a mere scintilla, at most affording the basis of a mere guess or speculation.

 There was evidence entirely consistent with having kept a lookout sufficient to account for the failure of the cab driver to see the car in time to prevent the collision, aside from the fact that he was. blinded by approaching lights. According to the cab driver's testimony, he was driving at a speed of fifteen or twenty miles an hour for a considerable distance, when, because of undimmed lights of an approaching·car he could not see the street, except just down in front of his fender. Driving at a negligent speed under the circumstances was alleged as an independent ground of recovery, and every element thereof was, we think, supported by some evidence. But no issue involving that ground of recovery was submitted or requested or objection made to the failure of the court to submit same. We are unable to satisfy ourselves that every issue in such ground of recovery was *con-*

*clusively* established by the evidence, and hence, we must conclude that such ground of recovery was waived under provision of T. R. C. P. 279. Nevertheless, it appears that the reason the cab driver did not see the car in time to avoid the collision may have been because he was driving too fast in view of the conditions of visibility.

Appellees in their motion and brief argue that the speed of the car under the circumstances properly entered into consideration of the evidence of failure to keep a lookout. This contention seems to us to be wholly untenable. It isn't permissible for a party to allege one ground of recovery and fail to establish it either conclusively or by the verdict of the jury and in the absence of its submission use it to support recovery upon a different and independent ground. By alleging the two grounds of recovery, appellee himself elected to separate the questions of driving at a negligent speed and failing to keep a lookout.

It is our conclusion that the motion for rehearing should be overruled. It is accordingly so ordered.