Opinion issued March
31, 2011



In The

Court of Appeals

For The

First District of Texas

————————————

NO. 01-09-01097-CV

————————————

OLGA MATA,
INDIVIDUALLY AS REPRESENTATIVE OF
THE ESTATE OF ELPIDIO MATA AND A/N/F OF ROCIO MATA,
RUBY MATA, RUDY MATA, AND PALOMA C. MATA,
MINOR CHILDREN, AND RAQUEL MATA AQUILAR,
ROSEMARY MATA, AND ROSSY CAMPA, Appellants

V.

Energy absorption systems, llc A/K/A
ENERGY ABSORPTION systems, inc.,
quixote transportation safety, inc.,
keller krash kushions, inc. d/b/a
contractors barricade service,
williams broTHERS construction co., and
odum services of houston,
Appellees

 



 



 

On Appeal from the 412nd
District Court

Brazoria
County, Texas



Trial Court Cause No.
38047

 



 

MEMORANDUM
OPINION

          This
appeal concerns a highway collision between a tractor-trailer and a crash
cushion.  Appellants, Olga Mata,
individually as representative of the estate of Elpidio Mata and as next friend
of Rocio Mata, Ruby Mata, Rudy Mata, and Paloma C. Mata, minor children, and
Raquel Mata Aquilar, Rosemary Mata, and Rossy Campa (collectively, “the
Matas”), appeal summary judgments granted in favor of appellees, Energy
Absorption Systems, LLC, also known as Energy Absorption Systems, Inc. (“Energy
Absorption”), Quixote Transportation Safety, Inc. (“Quixote”), and Keller Krash
Kushions, Inc., doing business as Contractors Barricade Service (“Keller
Krash”), Williams Brothers Construction Co. (“Williams Brothers”), and Odum
Services of Houston (“Odum Services”). 
In their first issue, the Matas contend that the trial court erred by
granting Energy
Absorption, Quixote, and Keller Krash’s motion for no-evidence summary
judgment.  In their second issue, the Matas contend that the trial court erred by
granting Williams Brothers’ motion for no-evidence summary judgment and by
granting Odum Services’ motion for traditional and no-evidence summary
judgment.  Concluding that the trial
court properly granted the motions for no-evidence summary judgment, we affirm.




 

Background

          In 2006, the Texas Department of Transportation
(“TxDOT”) contracted with Williams
Brothers to complete a highway construction project on US-59 in Sugar
Land, Texas.  Under the terms of the
contract, Williams Brothers
agreed to narrow the left lane of the highway. 
This was to be accomplished by painting a new centerline[1]
to the right of the existing centerline; afterward, the preexisting centerline
was to be removed.  Williams Brothers
also agreed to install a concrete barrier with a crash cushion in front of
it.  The barrier and cushion were to be
placed to the left of the new centerline. 
The contract terms specified that the crash cushion would be a REACT 350
Narrow crash attenuation system.

          Energy Absorption, which is a
subsidiary of Quixote,[2]
manufactured the REACT 350 Narrow.  The
REACT 350 Narrow consists of a row of high-density plastic barrels sitting in a
metal frame, the front of which is bolted to the ground.  Along each side of the barrels run two or
four rows of metal cables, which are affixed to bolts on the front of the frame.  The main purpose of the cables is to provide
redirective capacity for side impacts. 

          Williams
Brothers
subcontracted with Odum Services to procure and install the crash cushion.  Odum Services purchased the crash cushion
from Keller Krash, a distributor.  Odum
Services installed it on US-59 in April 2006. 


          About a week later, the decedent,
Elpidio Mata, was diving a tractor-trailer through the construction zone in the
leftmost traffic lane when his tractor unit drifted left and impacted the crash
cushion.  Upon impact, the tractor unit’s
left-front wheel and axle, which are necessary for steering, were removed.  The tractor-trailer crossed both lanes of
traffic until it stopped on the grass, where it became engulfed in flames.  Mata subsequently died from smoke inhalation
and extensive burns suffered during the crash. 


          An eyewitness to the crash was driving
a tractor-trailer about eight cars behind Mata, and he described the collision
to a police officer responding to the scene. 
Officer Gamble conducted an accident reconstruction and prepared an
accident report.  Later, the Matas hired
an expert, David Bosch, who holds a doctorate degree in material and
engineering science.  Bosch found a cable
similar to ones used by the crash cushion. 
Bosch compared that cable to the striation marks on the left-front axle
components from Mata’s tractor unit. 
Based on this examination as well as an examination of other parts of
the tractor unit, Bosch concluded that during the crash, the cable became
entangled with the left-front axle components, causing the wheel to be
removed.  Bosch, however, provided
neither evidence connecting the wheel removal to the fire nor any other
evidence concerning the cause of the fuel-tank rupture or the start of
the fire.

          Before the collision, Williams Brothers provided to Odum
Services the TxDOT schematics instructing where to install the crash
cushion.  The schematics depict a single
centerline.  When Odum Services arrived
at the installation site, they discovered two centerlines.  TxDOT project manager
Joe Mendoza, who was responsible for overseeing the construction project to
ensure that it was built according to design, was present when the crash
cushion was installed.  Mendoza explained
that due to the need to move traffic over first, the crash cushion had to be
placed while the preexisting centerline was still there.  Odum
Services installed the crash cushion in front of the concrete barrier, to the
left of the new centerline, as specified by the TxDOT contract.  Marcus Odum, the foreman who installed the
crash cushion, testified that Odum Services installed the
crash cushion on top of the outermost centerline and placed a
yellow-and-black striped sign, known as a “nosepiece” or “chevron,” on the
front barrel. 

          After the crash, the yellow-and-black
striped sign was missing from the front barrel. 
The bolts holding the crash cushion’s frame to the ground had
been pulled out, damaging the surrounding asphalt.  Because the bolts could not be properly
re-drilled in the same location, TxDOT decided to reposition the crash cushion
and the concrete barrier a couple of inches to the left of its initial
location, just far enough so that the bolts could be re-drilled.  

          The Matas sued Energy Absorption, Quixote, and Keller Krash on theories of
product defect, marketing defect, and negligence.[3]  Energy Absorption, Quixote, and Keller Krash moved for summary judgment
on no-evidence grounds, which the trial court granted.  The Matas additionally sued Williams Brothers and Odum Services on
theories of negligence and premises liability.[4]  Williams
Brothers and Odum Services separately moved for summary judgment on
identical traditional and no-evidence grounds. 
The trial court then granted Williams
Brothers’ summary judgment on its no-evidence grounds.  In contrast, the trial court granted Odum
Services’ summary judgment without specifying whether the grant was based on
the no-evidence or traditional grounds. 
The trial court then granted a motion to sever the claims against the
appellees, permitting this appeal.

Standard
of Review for No-Evidence Summary Judgment

After an adequate time for discovery, a party may move for
no-evidence summary judgment on the ground that no evidence exists of one or
more essential elements of a claim or defense on which the adverse party bears
the burden of proof at trial.  Tex. R. Civ. P. 166a(i); see Flameout Design & Fabrication, Inc.
v. Pennzoil Caspian Corp., 994 S.W.2d 830, 834 (Tex. App.—Houston [1st
Dist.] 1999, no pet.).  The trial court
must grant the motion unless the nonmovant presents more than a scintilla of
evidence raising a genuine issue of material fact on each element specified in
the motion.  Tex. R. Civ. P. 166a(i); Mack
Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex. 2006); Merrell Dow Pharms., Inc. v. Havner, 953
S.W.2d 706, 711 (Tex. 1997) (“More than a scintilla of evidence exists when the
evidence supporting the finding, as a whole, ‘rises to a level that would
enable reasonable and fair-minded people to differ in their conclusions.’”)
(quoting Burroughs Wellcome Co. v. Crye,
907 S.W.2d 497, 499 (Tex. 1995)); Flameout
Design, 994 S.W.2d at 834.  A motion
for summary judgment must stand or fall on the grounds expressly presented in
the motion, and a trial court may not grant summary judgment on a ground not
presented by the movant in writing.  Crimson Exploration, Inc. v. Intermarket
Mgmt., LLC, No. 01-08-00774-CV, 2010 WL 4484020, at *4 (Tex. App.—Houston
[1st Dist.] Nov. 10, 2010, no. pet. h.) (citing McConnell v. Southside Indep. Sch. Dist.,
858 S.W.2d 337, 341 (Tex. 1993); City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 677 (Tex. 1979)).  To determine if the nonmovant raises a fact
issue, a court reviews the evidence in the light most favorable to the
nonmovant, crediting favorable evidence if reasonable jurors could do so and
disregarding contrary evidence unless reasonable jurors could not.  See
Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844,
848 (Tex. 2009) (citing City of Keller v.
Wilson, 168 S.W.3d 802, 827 (Tex. 2005)).­ 


An appellate court reviews de novo a trial court’s ruling on
a summary-judgment motion.  Id.  If
a trial court’s order granting summary judgment does not specify the grounds
upon which judgment was rendered, an appellate court must affirm the summary
judgment if any of the grounds in the summary judgment motion are
meritorious.  FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex.
2000); Crimson Exploration, 2010 WL
4484020, at *4; see Tex. R. Civ. P. 166a(c) (“Issues not
expressly presented to the trial court by written motion, answer or other
response shall not be considered on appeal as grounds for reversal.”).  

Summary Judgment in favor of
Manufacturer and Distributor

          In
their first issue, the Matas contend that they produced more than a scintilla
of evidence on each element of their claims for a product-design defect,
product-marketing defect, and negligence asserted against the manufacturer,
Energy Absorption and Quixote, and the distributor, Keller Krash.

          A.      Products Liability—Design Defect

          To
recover for a products liability claim alleging a design defect, a plaintiff
must prove:

(1)   the
design defect rendered the product unreasonably dangerous;

 

(2)   at the
time the product left the control of the manufacturer or seller, a safer
alternative design existed; and

 

(3)   the
defect was a producing cause of the injury for which the plaintiff seeks
recovery.

 

Tex. Civ.
Prac. & Rem. Code Ann. § 82.005(a), (b)(2) (West 2009); Timpte Indus., Inc. v. Gish, 286 S.W.3d
306, 311 (Tex. 2009).

          We
conclude that the trial court properly rendered summary judgment because no
evidence shows that the REACT 350 Narrow’s exposed cables were the producing
cause of Mata’s injuries.  A “producing
cause” is “a substantial factor in bringing about an injury, without which the
injury would not have occurred.”  Ford Motor Co. v. Ledesma, 242 S.W.3d
32, 46 (Tex. 2007).  Generally, competent
expert testimony and objective proof that a defect caused the harm is
required.  See Nissan Motor Co. Ltd. v. Armstrong, 145 S.W.3d 131, 137 (Tex.
2004); see also Rangel v. Lapin, 177
S.W.3d 17, 22 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).  “Proof other than expert testimony will
constitute some evidence of causation only when a layperson’s general
experience and common understanding would enable the layperson to determine
from the evidence, with reasonable probability, the causal relationship between
the event and the condition.”  Mack
Trucks, 206 S.W.3d at 583.

          The
Matas suggest that testimony from the eyewitness, their engineering expert, and
Officer Gamble provides some evidence of causation.  Their testimony, however, only provides a
causal link between the entanglement with the crash cushion’s cable and the
removal of the left-front wheel; no evidence shows that the wheel removal was a
producing cause of the fuel-tank rupture or the start of the fire that caused
Mata’s injuries.

The
eyewitness observed Mata’s tractor-trailer impact the crash cushion and
the  left-front wheel come in between the
barrels and the cable, removing the wheel. Afterwards, he saw Mata’s vehicle
catch fire.  Although he describes the
sequence of events, the eyewitness provides no testimony that the wheel removal, rather than impact with the
crash cushion, was a producing cause of the fuel-tank rupture or the start of
the fire that caused Mata’s injuries.  See Mack Trucks, 206 S.W.3d at 583.

Matas’ expert, Bosch, testified that the cable
caused the wheel to be removed, but he provided no evidence concerning what
caused the fuel tank to rupture or the fire to start.  The trial court disallowed Bosch from
testifying as to the cause of the fuel tank rupture and the fire, and on
appeal, the Matas do not challenge this ruling. 
Bosch did not offer an opinion as to the cause of the fire—his effort ended
with an opinion that the cable became entangled with the left front wheel,
causing its removal.  Bosch’s testimony,
therefore, fails to connect the wheel removal as a producing cause of the
fuel-tank rupture or the start of the fire that caused Mata’s injuries.  See id.

The Matas suggest that Office Gamble’s accident reconstruction
and police report provide some evidence concerning the cause of the fuel
tank-rupture and the start of the fire. 
His report states:

Upon
impact with the crash attenuator, the left front tire was removed from the
vehicle and the diesel fuel tank was ruptured. 
[Mata’s tractor-trailer] then travelled across both lanes of the highway
and into a grassy median and became engulfed with flames.

          

          The police report states that
the fuel tank ruptured “upon impact” with the crash cushion.  Officer Gamble testified that based on his
investigation and reconstruction, he was unable to determine the particular
event that caused the fuel tank to rupture. 
Gamble’s testimony fails to establish that the wheel removal, rather
than the severity of the impact with the crash cushion, caused the fuel tank to
rupture or the fire to start.  See
Mack Trucks, 206
S.W.3d at 583 (expert
testimony on causation is required because “[a] lay juror’s general experience
and common knowledge do not extend to whether design defects such as those
alleged in this case [defective tractor-trailer fuel system] caused releases of
diesel fuel during a rollover accident.”).  Officer Gamble’s testimony fails to exclude
other possible sources of puncturing, such as other impacts from the crash
itself.  See id. at 583–84 (expert testimony that
design defect is producing cause of fire is insufficient to preclude summary
judgment where it fails to eliminate other possible sources for fuel or
ignition).  Although some evidence shows
that the crash cushion’s cable caused the removal of the wheel, no evidence
shows that the crash cushion’s cable, by removing the wheel, was a producing cause
of the fire that resulted in Mata’s injuries. 
See id. at 583.  Accordingly, we hold that the trial court properly granted
no-evidence summary judgment on the
Matas’ design-defect
claim. 

                    B.      Products Liability—Marketing Defect

          The Matas contend that the REACT 350 Narrow crash cushion suffered from a marketing
defect in that it failed to warn of the risk of wheel entanglement.  A marketing defect is found if the lack of adequate warnings
or instructions renders an otherwise adequate product unreasonably
dangerous.  Benavides v. Cushman, Inc., 189 S.W.3d 875, 881 (Tex. App.—Houston
[1st Dist.] 2006, no pet.).  For a marketing-defect claim, a
plaintiff must establish:

(1)       a risk of harm is inherent in the
product or may arise from the intended or reasonably anticipated use of the
product;

(2)       the product supplier actually knows or
reasonably foresees the risk of harm at the time the product is marketed;

(3)       the product possesses a marketing
defect;

(4)       the absence of the warning or
instructions renders the product unreasonably dangerous to the ultimate user or
consumer of the product; and

(5)       the failure to warn causes the product
user’s injury.

Olympic
Arms, Inc. v. Green, 176 S.W.3d 567, 578 (Tex. App.—Houston [1st Dist.] 2004,
no pet.).  Each of these elements was
challenged in the motion for no-evidence summary judgment filed by Energy
Absorption, Quixote, and Keller Krash. 
The Matas’ summary-judgment evidence does not address the fifth element,
concerning whether the failure to warn caused Mata’s injuries.  See,
e.g., id. at 579 (plaintiff makes
showing of more than scintilla of evidence that failure to warn caused injuries
if evidence shows intended user would have heeded warning).  Accordingly, we hold the trial court properly
granted no-evidence summary judgment on the Matas’ marketing defect claim. 
See Tex. R. Civ. P. 166a(i); Mack Trucks,
206 S.W.3d at 582; Havner, 953 S.W.2d
at 711.

          C.      Negligence

          The Matas contend that Quixote, Energy
Absorption, and Keller Krash are negligent by various acts and omissions
relating to the design, testing, and reporting of the REACT 350 Narrow crash
cushion.  To prevail on a negligence
cause of action, a plaintiff must establish that the defendant owed him a duty,
the defendant breached that duty, and the breach proximately caused his
damages.  W. Invs., Inc. v. Urena, 162 S.W.3d 547, 550 (Tex. 2005).  To establish proximate causation, a plaintiff
must prove causation in fact and foreseeability.  Id.
at 551.  To establish causation in fact,
a plaintiff must prove that the breach was a substantial factor in bringing
about his injuries and that without the breach, the harm would not have
occurred.  Id.  To establish
forseeability, a plaintiff must prove that a person of ordinary intelligence
would have anticipated the danger caused by the breach.  Sw. Key
Program, Inc. v. Gil-Perez, 81 S.W.3d 269, 274 (Tex. 2002).  “If a defect is not a producing cause of an
injury, it cannot constitute, as a matter of law, a proximate cause.”  Ford
Motor Co. v. Miles, 141 S.W.3d 309, 318 (Tex. App.—Dallas 2004, pet.
denied).

          In their second amended petition, the
Matas contend that Quixote, Energy Absorption, and Keller Krash were negligent:

(1)      
in
designing the REACT 350 Narrow crash cushion in various ways;

(2)      
in
testing the crash cushion;

(3)      
by
failing to test the crash cushion with heavy trucks;

(4)      
by
failing to inform the Matas of the risk of entanglement;

(5)      
by
failing to disclose the risk of entanglement;

(6)      
in
marketing the crash cushion;

(7)      
by
failing to adequately train and assist dealers as to the risk of entanglement;

(8)      
by
failing to meet or exceed internal corporate guidelines;

(9)      
by
failing to comply with standards of care applicable to the highway safety
industry insofar as providing reasonable protection in an impact with the crash
cushion. 

          In
their motion for no-evidence summary judgment, Energy Absorption, Quixote, and
Keller Krash contend there is no evidence of any negligence by them that caused
Mata’s injuries.  In their summary judgment
response, the Matas do not address the claims enumerated above as (4) through
(9).  Because they have provided no
evidence of negligence under those theories, the trial court properly rendered
summary judgment on those claims.  See
Tex.
R. Civ. P.
166a(i); Mack Trucks, 206 S.W.3d at
582; Havner, 953 S.W.2d at 711.

          The Matas’ claims based on the three remaining assertions, in numbers (1)
through (3), for negligent design, negligent testing, and failing to test are
premised upon the existence of a design defect. 
These claims fail because there is no evidence that a design defect was
a producing cause of Mata’s injuries.  See Miles,
141 S.W.3d at 318 (finding no evidence of proximate cause in negligence claim
based upon product defect where there is no evidence that defect was producing
cause).  Because the Matas fail to show
proximate causation, the trial court properly rendered summary judgment in
favor of Quixote, Energy Absorption, and Keller Krash.  See id.

We
overrule the
Matas’ first issue.

Summary
Judgment in favor of Installers

          In their second issue, the Matas
contend that Williams Brothers and its subcontractor Odum Services were
negligent based on their installation of the crash cushion and the premises
condition of the construction site. 
Specifically, the Matas contend that the installers failed to remove the
preexisting centerline and failed to install a yellow-and-black striped
nosepiece warning sign.  Claims
for negligent-activity and premises liability are each forms of negligence, but
they are independent theories of recovery. 
W. Invs., Inc., 162 S.W.3d at
550; Clayton W. Williams, Jr., Inc. v.
Olivo, 952 S.W.2d 523, 529 (Tex. 1997); West
v. SMG, 318 S.W.3d 430, 438 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

          A.      Negligent
Activity

          Recovery on a
negligent-activity theory requires that the person have been injured by or as a
contemporaneous result of the activity itself rather than by a condition
created by the activity.  Keetch v. Kroger Co., 845 S.W.2d 262,
264 (Tex. 1992).  Because the activities of which the
Matas complain occurred during the installation of the crash cushion, which
occurred a week before the accident, the resulting injuries were not a contemporaneous result of the
activity.  Rather Mata’s injuries were a
result of the conditions created by the activity, namely the placement of the
crash cushion on top of the preexisting centerline and the missing warning
sign.  Accordingly, the Matas’ claims against the installers can arise
only under a premises-liability theory.  See id.

          B.      Premises
Liability

          To
prevail on a premises liability claim, among other elements, a plaintiff must
show the existence of a premises condition posing an unreasonable risk of
harm.  LMB, Ltd. v. Moreno, 201 S.W.3d 686, 688 (Tex. 2006).  “A condition presenting an unreasonable risk
of harm is defined as one in which there is a sufficient probability of a
harmful event occurring that a reasonably prudent person would have foreseen it
or some similar event as likely to happen.” 
Seideneck v. Cal Bayreuther Assocs.,
451 S.W.2d 752, 754 (Tex. 1970).

          Although
they produced some evidence that the preexisting centerline could be confusing
to a driver, the Matas failed to provide any
evidence that the placement of the crash cushion or the presence of the two
centerlines presented an unreasonable risk of harm.  See
Lofton v. Marmaxx Operating Corp., No. 01-06-01109-CV, 2008
WL 525678, at *3 (Tex. App.—Houston [1st Dist.] Feb. 28, 2008, no pet.) (mem.
op.).  They provided no evidence that any
other vehicles had collided with similarly placed crash cushions, that
placement of a crash cushion on top of a preexisting centerline is unusual, or
that the possibility of confusion presented an a prohibitive degree of
danger.  See id.  The Matas’ expert, Bosch, testified
that the later placement of the crash cushion farther from the road rendered a
collision “much less likely,” but he provided no basis for this testimony.  Bosch never visited the accident site,
performed an accident reconstruction, or calculated Mata’s speed or
direction.  See LMB, 201 S.W.3d at 688–89.  His
testimony is incompetent summary judgment evidence because he failed to address
the underlying facts on which his conclusion was based.  See id.


          The Matas also contend that the
missing black-and-yellow striped warning sign on the front of the crash cushion
was a premises condition posing an unreasonable risk of harm.  In support of their allegation that the sign
was missing before the accident, the Matas observe that the sign is missing in
a police photo taken afterwards.  Given
the tremendous force involved in the intervening crash, however, this photo is
no evidence concerning whether the sign was missing before the collision.  See
Empire Gas & Fuel Co. v. Muegge, 135 Tex. 520, 531, 143 S.W.2d 763, 769
(1940) (photos taken after accident used to prove conditions at time of
accident must be supported by testimony that photos fairly and accurately
represent condition at time of accident). 
The only evidence regarding the sign prior to the accident is from
Marcus Odum, who testified that Odum Services installed the sign at the same
time it installed the crash cushion.  The
Matas have failed to show that this alleged premises condition—the missing
sign—existed at the time of the accident.

          We conclude that the trial court
properly granted Williams Brothers’ and Odum Services’ motions for no-evidence
summary judgment because the Matas produced no evidence of a premises condition
posing an unreasonable risk of harm.  See LMB, 201 S.W.3d at 688.  

          C.      Matters Not
Reached

          Having affirmed the trial court’s
grant of no-evidence summary judgment on the Matas’ claims for relief, we do
not reach the question of the applicability of the affirmative defense to those
claims asserted in Odum Services’ and Williams Borthers’ motions for
traditional summary judgment.  See Tex.
Civ. Prac & Rem. Code Ann. § 97.002 (contractors are not liable if
construction is in compliance with TxDOT contract); Grynberg v. Grey Wolf Drilling Co., L.P., 296 S.W.3d 132, 136 (Tex.
App.—Houston [14th Dist.] 2009, no pet.).

          We overrule the Matas’ second issue.

Conclusion

 

We affirm the no-evidence summary judgments rendered by the
trial court.

 

                                                                   Elsa Alcala

                                                                   Justice


 

Panel consists of Chief Justice
Radack and Justices Alcala and Bland.











[1]           A
centerline is a solid-yellow road surface marking that runs along the leftmost
lane of traffic, indicating that traffic on the other side moves in the
opposite direction.  See Griffin v. State,
54 S.W.3d 820, 823 (Tex. App.—Texarkana 2001, pet. ref’d) (citing Tex. Transp. Code Ann. § 545.051
(West 1999) (entitled “Driving on Right Side of Roadway”)).

 





[2]           Energy
Absorption was the original company, and the name “Quixote” was used as a
public name in the stock exchange.





[3]           The Matas also sued Absorption,
Quixote, and Keller Krash for gross negligence, misrepresentation, and
breach of implied warranties, on which the trial court granted summary
judgment.  On appeal, the Matas do not
challenge the trial court’s grant of summary judgment on these theories.

 





[4]           The Matas also sued Williams Brothers and Odum Services for
product defect, marketing defect, gross negligence, misrepresentation, and
breach of implied warranties.  On appeal,
the Matas do not challenge the trial court’s grant of summary judgment on these
theories.